The United States Court of Appeals for the Federal Circuit is now open and in session. God save the United States and this Honorable Court. The first case for argument this afternoon, the only case, is 20-1196, Piano Factory Group v. Schiedmayer Celesta GmbH. Mr. Stevenson, whenever you're ready. Thank you, Your Honor. May it please the Court, I appreciate the opportunity to address these issues. The first point I'd like to discuss with respect to our case is to deal with the constitutionality issues. And I think as I considered the Arthrex decision from the Supreme Court, there's kind of a key point that if you consider it, the concurrence and the dissent, the real issue the court struggled with was the fact situation where the director could not step in and change a panel decision after the fact. A lot of the things the government was proposing were prophylactic measures or retaliatory measures, but they weren't able to change the panel decision after the fact. And so the question is in this case, just on page 8 of Arthrex, it says whether the nature of the responsibilities of administrative trademark judges is consistent with their method of appointment. That, in my opinion, requires a consideration of all of the statutes that govern the operation of the administrative trademark judges. Mr. Stephenson, this is Judge Bryson. At the very end of its opinion, the court talked about comparing the PTAB judges with the TTAB judges, and it spoke favorably of the TTAB judges. Given that that was the court's characterization of the role of the TTAB judges as being subject to the director's discretion and direction, and given that the 2020 statute, even though it was enacted after the decision in this case from the TTAB, Nonetheless, that statute Congress announced did not indicate that there was a change in the law that simply confirmed the director's authority. Why doesn't Arthrex in that event answer this case? That's an excellent question. The real issue that I see with respect to cancellation proceedings for administrative trademark judges is Section 1092, and that for administrative trademark judges, the whole Lanham Act itself, there's no statutory right to rehearing. But doesn't Section 1092 apply only to the supplemental register? It does, but you have to remember… And this is a principal register case, right? It is, but if any part… So Section 1092 has nothing to do with this case? It actually has a lot to do with this case for this reason. The judges, everything a judge does, an administrative trademark judge does, has to fall within this standard. Otherwise, the administrative trademark judge becomes a principal officer rather than an inferior officer. You can be unconstitutionally appointed if you're doing something that's unrelated to any particular case at hand, so long as there's a constitutional defect in your appointment. So this whole statutory scheme has to be clean. So are you saying that if there was some squirrelly provision that said that every February 29th, a TTAB judge could sit by designation on a district court, that would mean that the TTAB judges could not do their normal work subject to the direction of the director on a day-to-day basis on every day other than February 29th? Is that your position? My position is that when you… I'd like you to address that question, though. Yeah, so if you take the administrative trademark judges and you make them district court judges, you've now switched branches of the government. Right. They're district court judges for a day, but does that mean that everything else they do, assuming that it is perfectly lawful and subject to the director's direction, is then rendered unconstitutional? I think Arthrex is clear that there was a constitutional problem, and then they had to come up with a remedy. So I think my position would be that, yes, you would have a constitutional issue with their appointment because they're performing tasks that do not follow the constitutionality grounds. Now, what the remedy for that is is a separate question. Does that invalidate what happened? That's a different question. But is there a constitutional defect in their appointment? That would be my position, yes. So I also do think, though, that what is unique about the TTAB judges, though, is that there isn't a statute that governs re-hearings. So while the government has taken the position that because the TTAB has the ability to make decisions, make cancellation decisions, there's also a right to revisit those decisions, that doesn't mean that there's any particular remedy that a party or even the director has access to in the form of a re-hearing that's guaranteed by that. Excuse me. This is Judge Stoll. One thing I thought was notable was that there was emphasis in the Arthrax decision that the director under the AIA did not have any discretion at all on whether to cancel the patent following an IPR decision from the TTAB. In contrast, under Section 1068, the TTAB statute seems to suggest that the director may cancel, so it's only may, not shall. And this seems to be something that's an important distinction between what the Supreme Court was considering in Arthrax and what we're considering here. What's your response to that? So my response to that is twofold. First, for 1068, I don't disagree that it says may. For 1092, it says shall. So before the Trademark Modernization Act, it said shall, and it was not optional. It was mandatory. The director could not undo it for a supplemental register. Excuse me. Just clarifying. 1092, again, relates to the supplemental register, right? Correct. Correct. And we're talking principal register, is that right? Yeah, we are talking principal register here. But again, going back to my point that if whatever you do is unconstitutional or violates the Appointments Clause, you still have been unconstitutionally appointed, regardless of which statute applies. So because 1092 is the same problem that Section 6C has as it relates to cancellations, administrative trademark judges have the same problem administrative patent judges do. What about 1067? You know, again, another distinction. Under the AIA, the director was not able to have a panel on the PTAB in which he was alone by himself. He would have to be one of three, and, you know, so that was not supervisory. Whereas in Section 1067, the PTAB would allow the director to be a one-person PTAB board. That's a good point, but this kind of goes to the second point I was just about to make. The issue of no statutory right of rehearing doesn't give the director any remedy at all. It doesn't tell us that the statute permits the director to take a decision that's already been made and reappoint himself as the only person who can hear it. I mean, if you want to talk about an opaque process... Can I just interrupt you for a second for saying that because the director would have to make that determination in advance, that it's not a final say? Is that your point? Yeah. In other words, you know, there's no statute that says what happens. We don't have this clear process, and frankly, does the director have the right to do it? Why wouldn't the director have the right by regulation to create a rehearing process by the PTAB and then appoint himself as the PTAB member? The concern that I have with just relying on regulation is that didn't sit well with the Supreme Court with respect to the PTAB judges. They actually relied and hung their hat on the ability for them to invalidate part of the rehearing statute. From a due process perspective, whatever the government gives you by rule, they can just totally take away. By statute, though, Congress gives litigants and other people a defined process. But remember, the appointments clause is not for the benefit of litigants. It's for the benefit of the structure of the government. So if the director has authority to do something like create a rehearing system in which he is the person doing the rehearing, why doesn't that satisfy appointments clause problems? The issue is the director – so I'm saying right now if that was happening at the PTO, if that's what the regulations actually said, you'd have a point. But right now, all the regulations point you back to the same PTAB panel, and they don't explicitly give you a right to get the director. Or for the director to step in either. What would happen is something shadowy in the background, and that's what in Arthrex the Supreme Court condemned. This opaque process where you can't tell where the director's responsibility is or what's going on in the background. Well, how do you account then for the fact that the Supreme Court at the end of its opinion – I'm sure you're familiar with that part of the opinion – in which they hold up the PTAB system as a model of constitutional appointments? The way I resolve that simply is by simply indicating that the Trademark Modernization Act that made specific, explicit changes to 1092 to correct the issue that was there was not enforced when this decision was decided. And there's nothing in that statute that indicates that it was intended to be retroactive. But on the other hand, isn't it the case that that statute specifically refers to its confirming director's prior authority and states, I think, in a note that the statute will not be construed to suggest that this constitutes a change in the director's authority? I think Congress is free to say whatever they want in the statute, but that doesn't change what the statute says. The statute says the director shall be cancelled by the director. The registration shall be cancelled by the director. It's not optional. There's no way out. And without any statutory right of rehearing, there's nothing to cancel that out in the statutory scheme at the time this case was decided. Could I ask you a question about another part of the case? Your argument on the question of latches, you say that you weren't required to raise the question of the argument that you're now making with respect to prejudice before the TTAB. Because if I understand the argument, it is that the error didn't become evident until after the TTAB rules, which was after you would have had to raise an objection. Is that your point? Yeah, I mean, it's an entirely theoretical harm until the TTAB decision. Right, but wouldn't that in effect mean that every error would be non, no, there would never be waiver of an error because the harm is always theoretical until the proceeding is over and you lose. For example, suppose I'm a criminal defense lawyer and I fail to object to the admission of inadmissible evidence. Well, the harm doesn't come until the verdict of guilty is returned against my client. That doesn't mean I haven't waived the problem. Isn't that the case? I would, but I would distinguish that situation from the one at hand where I have a senior common law user of a mark and a junior registrant, where the junior registrant is relying on the registration to protect them from the senior user. And where we're basically talking about a situation where you've got – once you show that there is a clear and unmistakable association, as the TTAB argued there was in this case, the standard for likelihood of confusion is less than that. And so essentially, you've painted the person into a corner. By rendering the decision, you've essentially opened and shut an infringement case. That's a different situation than failing to object to evidence. It's a situation that you kind of get painted into by box. It's an issue preclusion kind of situation. I'm just saying the TTAB needs to consider the issue preclusive effect as a potential harm when it's a rendering decision. There's no evidence that they did that in this case. They weren't asked to, as I understand it. You didn't ask them to. We didn't ask them to specifically come up with that at the time. That is correct. All right. I see my time has expired, so I'm willing to yield unless there are further questions. If you want to take a couple more minutes to discuss the merits, that would be fine with me. You're into your rebuttal time, but it's your choice. I would like to talk about one specific issue that's really the issue in this case. One of them is the nature of the goods at question. A celesta is a specific kind of musical instrument. It sounds like a series of bells. As you press the keys, it sounds like a series of bells. The most famous use is to play the Dance of the Sugar Plum Fairy from Tchaikovsky, the part that says, That's the worst argument I've ever been at where we had musical company. I know. One of the problems with this case is you can't ever hear the sound of the instrument, and that's an issue. They sound differently from each other. They don't play each other's music. A piano and a celesta, they don't play each other's music. If you sat down and pressed the keys, you'd immediately be able to tell they're different instruments. The question I would just like to bring up is that I couldn't use, if, for example, the registration was transferred to Sheedmare, they could not renew this registration with their use for celestas because celestas are not pianos. They would present a specimen, a photograph of the celesta, and under 18 U.S.C. 1001, you could not make a good faith statement saying that that is a piano, a pianoforte. The Declaration of Russell Casman in Appendix 1166 and 1167 confirms this. He sold both celestas and pianos. In fact, he sold Sheedmare pianos and Sheedmare celestas at the same time. No one was confused, and they were clearly different instruments. And that is one thing on the merits that I would like to put out is that the Board erred by saying that the goods that Sheedmare has rights to are celestas, are pianos, when, in fact, all they make is celestas and have not made pianos for 41 years and have abandoned them. Thank you. We'll restore some time for rebuttals. Thank you. Thank you. Mr. Stryker? May I please report, Your Honors? Also, Ms. Jennifer Utrecht, speaking on behalf of the United States Patent and Trademark Office, and it was understood that she would bear the laboring oar with respect to the institutionality issue in this case. With respect to the other issue that was raised, that is the latches, the TTAB reached a decision that there was no material prejudice resulting from the filing of our petition to cancel. The appellant has failed to demonstrate any prejudice that occurred in this case as a result. The arguments of the appellant do not include any material damages in the nature of pecuniary damages or damages relating to investments that might have been made or anything of that nature. And they have not made any allegations in that respect. Rather, they have come up with a rather novel theory that as a result of having lost the case before the TTAB, now some form of re judicata has been created. In this case, I believe, issue preclusion. And as a result, in the purely hypothetical situation where at some point in the future, Shiedmeier might sue the appellant, they would be damaged. First of all, that rather novel theory of law was never brought before the TTAB and shouldn't be heard by this court. And second of all, it really does not make sense in the long run. If the matter is kept to its logical conclusion, then every time a litigant lost a case, there would be material damages as a result because of some hypothetical theory that a person might be damaged because of re judicata in the future. Therefore, I do not believe that the theory of re judicata has been established. Mr. Stryker, this is Judge Proust. Let me ask you about another matter raised by your friend, which is that his registration is only for pianos. So they complain that the relevant goods should not, why should the relevant goods category be keyboard musical instruments, which includes things other than pianos? I guess you agree with that, right? Yes. First of all, a celesta is de facto a piano. The only difference between the two, a piano and a celesta, is that in a celesta, when a key is struck, the hammer hits a plate of metal. I can't remember, did the board make that finding that a celesta is a de facto piano? The board made the finding that the two products are inherently similar. And they also noted that for purposes of false association, this type of similarity is not required. In a false association case, it is not necessary that the two products be identical or even that similar. It is only a question of whether the public will consider a connection between the two. I'm kind of reminded of Johnny Carson with the Hello Johnny toilet brush, where a false association was found. There is absolutely nothing similar between the two products there. Products are not cheap. And if I want to go out and buy a piano, I want to go out and buy a piano, not even though you may say that there is a lot of similarity between the two. Usually the consumer would know what he or she wants to purchase and would not be confused about the two different instruments, right? Does that make sense? They might be able to tell a celesta from a piano, but they would assume logically, as what happened in this case, that pianos are often manufactured by the same company that manufactures a celesta. And more importantly, celestas and pianos are sold often in the same venue. Mr. Kazman, which is the appellant's witness running a piano store, was selling both celestas and pianos. Our witness, Ms. Kazimir, also runs a piano musical instrument store, also was selling celestas, in fact our celestas, and was selling pianos. So that is a connection sufficient to meet the requirements of the statute relating to Section 2A false association. One of the issues also raised by the appellant was the Internet evidence. And the argument is made that the Internet evidence was not proper evidence because of the time period between the Internet evidence being taken and the time when the female reputation of the Sheed buyer mark was required, namely 2007. The Internet evidence was taken considerably later, several years after that. Internet evidence in itself is available and proper evidence in a case, perhaps not for the truth of what is indicated, but certainly for what has taken place. In this case, the Internet evidence was a Google search covering 40 pages of Sheed buyer material, a very impressive amount, as well as a Wikipedia entry. It is my position that the board was completely correct in assuming that this is available evidence, tending to show the fame and reputation of a Sheed buyer, even though it went back several years. The evidence, like the evidence of which I am aware, is rebuttable. And it was up to the appellant, if it did not think that it was salient evidence, to rebut it in some way or another, and they did nothing. And I believe that it was perfectly correct for the TTAB to accord that powerful evidence some degree of currency in this case. It is not the only evidence in this case. There is a host of other evidence relating to the fame or reputation of Sheed buyer, and this is just a contributing factor. Mr. Stryker, if I could, I have a factual question I'd like to ask you. On page 20 of the appendix, I think it's page 19 of the board's opinion, the board says that there's no evidence that the sales were unauthorized. These are the pre-2000 sales of pianos under the Sheed buyer mark. That struck me as a little strange, because I thought it was your position that, for example, sales by Kawai were unauthorized by Sheed buyer. Is there an explanation for the statement by the board on that point? That's a very good question. Whatever happened in 1980 over 40 years ago is at best... Well, I understand, but I'm really trying to get at the precise problem of did the board make a mistake in saying that there was no evidence that they were unauthorized? No, I don't believe so. There's no evidence that it was specifically authorized either. And I think the board assumed that it was not unauthorized in connection with the joint venture that was made with connection with... EBAC. Yes. But there was really no evidence really here as to an unauthorized activity. Didn't Mrs. Sheed buyer say so in her declaration that it was unauthorized, that Kawai's sales were unauthorized? I don't have the declaration in front of me. I do. And I think that's effectively her testimony about the Kawai. If the Kawai... If that's what Mrs. Sheed buyer said, then that is correct. And that the board was not correct in indicating that that might have been an unauthorized, at least in the eyes of Mrs. Sheed buyer, an unauthorized sale. And I think we have to bear in mind that we do not know very much of anything of the Kawai sales. They could be very limited. It could be just two or three. We have no idea and very little evidence of what actually transpired there. All right. Okay. Thank you. I think we're ready to hear from Ms. Altrek. Good afternoon, Your Honor. This is Jennifer Utrecht on behalf of the intervener. I'd like to dedicate my time today to discussing the Supreme Court's recent decision in Altrek on the merit on the appointment college challenge race in this case. Before you get to that, could I ask you a question really that goes to nomenclature more than anything else? I noticed, and this is really asking about a kind of the trademark Argo. I noticed that the courts, including our court, have referred to 2A violations of this sort by using the term false association. But the board seems to be fairly consistent in referring to these violations as false suggestion cases. What is, in your view, the more proper way to characterize this particular 2A violation? I don't know. There is certainly an inconsistency sometimes in how we discuss these as a nomenclature thing. But I think they both get to the same point, which is, is there an association or suggestion that there's a tie between these companies and these goods when there really shouldn't be? All right. It doesn't make any difference whether you use one or the other. They're equivalent. Right. The analysis is the same regardless of whether you use the word association or suggestion. And could I ask one other question? I'm sorry, I'll let you get to your appointments clause issue. The board found that there was an inference of intent in this case against Mr. Tribus. And I was wondering, what role do you think intent plays in the analysis of a 2A violation? In particular, where would the issue of intent fit within the Notre Dame factor? So, sorry, one second. Intent, I think, you know, goes to, at least is evidence of a question of whether the public would associate these, I mean, would associate these products together. Because, of course, if someone's trying to create a false association, that might not be dispositive evidence, but it's certainly relevant evidence as to whether the public would, in fact, make that sort of association. Okay. Well, thank you. With respect to Supreme Court's decision in Arthrex, as Your Honors know, in Arthrex, the Supreme Court found that administrative patent judges were principal officers because of a specific restriction in 35 U.S.C. Section 6C that limited the director's authority to review and reverse decisions of the patent trial and appeal board. The fact that that particular section states that only the PTAB could issue a reviewing and that all decisions by the PTAB had to be made by three-member panels. And so, as written, the Patent Act precluded the director from directly, unilaterally reviewing and reversing administrative patent judge decisions. And that, what's critical here is that there's no such restriction with respect to the trademark trial and appeal board. In fact, the Supreme Court explicitly modeled the remedy in Arthrex based on the statutory scheme at issue here. It held that 35 U.S.C. Section 6C was unconstitutional to the extent it limited the director's authority to rehear and explicitly said that permitting the director to rehear would bring the patent statutory scheme in line with the trademark statutory scheme. That confirms that there's no constitutional issue with respect to the appointment of a review. This is Judge Proust. So, your view is the absence of a prohibition is sufficient? Yes, Your Honor. Because that's how the matter allows it? Yes, Your Honor. Because as this Court has recognized in POCIO, I'm going to butcher this name, Cessna-Cusho, and as other courts of appeals have recognized in other decisions, there is an inherent, inherent in the power to decide is the power to rehear. And unless there is a statutory restriction, yes, please. Ms. Altrex, why don't you proceed? Thank you. Your Honor, I believe the question was, you know, whether rehearing is inherent. And the answer is yes. Unless there is a specific statutory limitation prohibiting or restricting rehearing, the power to rehear is inherent in the power to decide. The problem in our effect, of course, is that there was a specific statutory restriction, 35 U.S.C. Section 6C, that only the PTAB could rehear and all decisions of the PTAB had to be made by three-member panels. That restriction does not exist with respect to the trademark Trial and Appeal Board. Lanham Act does not have that restriction. And, in fact, Congress confirmed when it enacted the trademark modernization law that there is no such restriction and that the director has always had the authority to rehear. And specifically, Congress said that this is… Well, Ms. Altrex, I've got a question about that. That seems quite unusual. And what are we to make of that kind of congressional edict, that sort of retroactive language? Like, this is what we meant to say 20…this is exactly what we said 20 years ago. It's quite unusual, right? And are we supposed to take that as a real statutorily binding pronouncement when they… Well, there are a number of statutes, a number of times when Congress makes changes to statutes that they include language like that. You know, sometimes we see this when Congress amends a statute to make various technical changes, and they will include language that says this is not intended to change the way things are. And the reason for that is because it's done with the intent to either, as was the case here, preempt possible litigation over what Congress views as a non-issue or to prevent new litigation when people say that the change was meant to create some sort of substantive change when Congress didn't want to. But more importantly, you don't need to take Congress's word for it here because, as already discussed, there is an inherent authority to rehear. And the problem in Arthrex was the restriction that existed in 35 U.S.C. Section 6. And there's no doubt that that restriction did not exist with respect to the landmark…with respect to the Lanham Act governing the trademark trial and appeal board. There was not, at the time of this proceeding, before the Trademark Modernization Act, there was not any statutory prohibition on the director's review of trademark trial and appeal board decisions. I take it you would have agreed that prior to 1999, there would have been a problem with the TTAB composition issue, right, because of the three-judge requirement that used to be in the statute? So, yes, prior to 1999, there was a restriction that was essentially identical to the restriction the Supreme Court found constitutionally problematic in Arthrex. But that was removed? That was removed. That's correct. So I guess your position is that regardless of how one construes the 2020 statute and whether one takes Congress at its word that it didn't intend to change anything, that in fact it didn't change anything, and this case would be identical if the 2020 statute had never been enacted. Yes, Your Honor, and in fact our intervener brief in this case was filed before the 2020 statute was enacted, and we put the same exact position there because the statute permitted the director the authority to rehear decisions by the TTAB before the Trademark Modernization Act. What do you say to your opposing counsel's 1092 argument? The short answer is that the fact that there may be mandatory language in 1092 really isn't constitutionally relevant. Remember that in Arthrex, there's similar mandatory language in 35 U.S.C. Section 318B, which says the director shall issue cancellation in accordance with the TTAB. But the Supreme Court didn't take issue with that mandatory language. It took issue with the fact that the director couldn't assert himself in a hearing process before he issued the cancellation, and that restriction came from Section 6C, the three-member panel restriction. The position then, I take it, is that as long as the director can insert himself as the TTAB, it doesn't matter whether he's required to or given the leeway about certifying the result. Absolutely. The question is, as long as he can rehear before certifying or he has the authority to rehear before certifying, then that's sufficient. And here he does have the authority to rehear before certifying. Of course, that is also shown by the remedies that the Supreme Court crafted in Arthrex. Section 318B still says shall, but the Supreme Court held that it was sufficient, so long as the director had the opportunity to rehear, that was sufficient to render the administrative patent judges to be inferior officers. And the same is true here. Whether or not Section 192 says shall, the director has the authority to rehear before issuing a cancellation, and that renders the administrative trademark judges inferior officers. Anything further from the panel? Have we managed to get Mr. Stryker yet? Yes, he appears to have rejoined the call, and I will unmute him. Great, great. Okay, and Mr. Stevenson, we'll restore four minutes of rebuttal if you need it. Yeah, I would like to make a few comments. Thank you. Sure. I do have just a couple of comments. I'll deal with responses to Utrecht first. The case that was cited in the government's brief actually says the power to reconsider, not to rehear. Rehearing is a specific form of reconsideration, but not the exclusive form of reconsideration. So just because the government has the ability to reconsider something does not mean they are required to give the litigants an opportunity to be heard, conduct supplemental briefing, or establish a way for the litigants to actually get to the director. Now, this is relevant because, as mentioned in our brief, since Arthrex, a specific way to petition the director after a PTAB decision has been established for the PTAB, for PTAB IPR proceedings, that has not been done for trademark judges, for decisions from the TTAB. So there is currently no way for a litigant to ask the director to reconsider or to rehear any decision from the administrative trademark judges at all. My request would simply be to not let the office off the hook. Make them follow the same process for trademarks that they do for patents and provide an actual mechanism to do that. But now the challenge we have providing that mechanism is there's a vacuum. There is no statute to disregard in this case. There's no statute to modify. There's no rehearing statute at all. And our government is a government of limited powers, and agencies have only the power that Congress grants them to do things. So Congress has to give power to conduct a rehearing, in my opinion, to the agency for it to conduct a rehearing as a specific form of reconsideration. I think an agency always has the ability to change its mind, but to interpret that they automatically are going to assume that they have to give a rehearing I think is giving them too much credit. An agency typically is going to want to do as little work as possible and may not provide adequate due process. And that due process issue of being able to get to the director is what creates this Appointments Clause issue. To Mr. Stryker's testimony, I think the intent issue is important. I think it's important in this case because Mr. Tribetz adopted this mark. He filed this application for the mark Sheedmare specifically for pianos because he believed at the time that Kawai and Ebach and all the other people who had stenciled made Sheedmare pianos had abandoned the mark. They no longer were making them, and in fact, the issue came up during prosecution of the trademark. The prosecution history contains internet printouts that date as late as 2004 that show that as of that date, Ruud Ebach's own, which was the company who believed they had the right to make Sheedmare pianos, continued to make Sheedmare pianos. I'm sorry. What year was that, did you say? 2004. As I was examining that, you can find that on Appendix 0923. This is Ruud Ebach's own record. This is from the actual file history of the trademark application that matured into the registration issue. The problem that we have with the evidence, and what I would rebut, Mr. Stryker said we produced no evidence to try to rebut the internet. Was the evidence that you're citing, was that one of the internet documents? It's one of the internet documents that's in the file history of the originally filed application for Sheedmare. Right, but those were the documents that the board said were inadmissible for their truth, the truth being whether or not they were still selling those pianos. They said they were inadmissible for their truth, but what the board, the error the board made was that they applied a double standard in reviewing that evidence versus Sheedmare's evidence. I don't understand why it's a double standard. The purpose for which they accepted the Sheedmare evidence was to show that there was familiarity in the market with the Sheedmare mark, not that a particular company was doing a particular thing, i.e. selling pianos under that mark. That seems like a dramatic difference to me for hearsay purposes. The main issue we have is we're not submitting it for the truth of the matter asserted, but whether the Pierce Piano Atlas and this other internet evidence in the file history is teaching the truth, the issue is what is it teaching? It needs to be considered for what it teaches on its face. But if it's not true, if we're not considering it for its truth, then why is it relevant? It's only relevant if it's true, right? Well, it is relevant to establish whether it appears that other people had rights to the mark. And the problem with considering evidence ten years after registration versus considering evidence three years before is that more likely than not your evidence three years before is more accurate than your evidence from ten years later. The internet just gets rewritten every day by what people put up. And so what is more probative of the fame at the time is the closest evidence to the time. That is our position on the internet evidence. Are there further questions for me? Because I know my time has expired. I'm not hearing any. Colleagues, hearing none, thank you. We thank all parties. And the case is submitted. That concludes our proceedings for this afternoon.